**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **John D. Leonard,** | **Case Nos. 5:23cr00427** |
| | **5:25cv2532** |
| **Defendant-Petitioner,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **United States of America,** | |
| **Plaintiff-Respondent.** | **MEMORANDUM OPINION & ORDER** |

This matter is before the Court on Defendant-Petitioner John D. Leonard's ("Defendant" or "Leonard") *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, filed on November 19, 2025.  (Doc. No. 36.)  Plaintiff-Respondent United States of America (hereinafter "the Government") filed a Brief in Opposition on January 2, 2026.  (Doc. No. 39.)  Leonard filed a Traverse on January 26, 2026.  (Doc. No. 40.)  For the following reasons, Leonard's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 36) is DENIED.

## I.    Background

### A.    Arrest and Indictment

Through the course of other investigations, federal investigators received information that Leonard was selling drugs from his home in Canton, Ohio.  (Doc. No. 26 at PageID# 126.)  On May 18, 2023, federal investigators executed a search warrant at Leonard's residence on Tyler Avenue SE in Canton.  (Doc. No. 22 at PageID# 81.)  Prior to executing the search warrant, investigators stopped Leonard in a vehicle leaving the Tyler Avenue SE residence.  (*Id*.)  Agents brought Leonard back to the residence to be present for the search.  (*Id*.)

During the search, investigators recovered (1) 1,304 grams of cocaine (packaged as a kilogram brick and several smaller bags), found in Leonard's bedroom; (2) 390.87 grams of fentanyl (in the form of 37.08 grams of fentanyl powder and 2,458 pills falsely marked as Oxycodone), found in Leonard's bedroom; (3) 26.83 grams of methamphetamine, found in the living room of the residence; (4) $11,670 U.S. currency, found in Leonard's bedroom; and (5) four firearms. (*Id*. at PageID#s 81-82.) Three of the four firearms were loaded with ammunition (one with a 50-round drum magazine). (*Id*.) One of the firearms (a Glock Model 19, 9 mm caliber semiautomatic pistol) was found in Leonard's bedroom, while the other three firearms (a Taurus model 605, .357 Magnum caliber revolver; Llama Gabilondo y Cia, 9 mm caliber semiautomatic pistol; and a Taurus model PT-22, .22 LR caliber semiautomatic pistol) were found in the dining room. (*Id*.) Investigators also recovered a kilogram press and a digital scale with drug residue. (*Id*.)

Leonard admitted to investigators that he knowingly possessed all of the above items seized from the Tyler Avenue residence during the execution of the search warrant. (*Id*. at PageID# 82.) Leonard further admitted that he was aware he was not legally permitted to possess the firearms found in the residence due to his previous felony convictions. (*Id*.)

On August 9, 2023, Leonard was indicted on the following six counts: (1) Conspiracy to Possess with Intent to Distribute Cocaine, Fentanyl, and Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and 846; (2) Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (3) Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (4) Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (5) Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and (6) Possession

of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. No. 1.)  On August 16, 2023, Leonard appeared at his arraignment and entered a plea of not guilty to all charges.  (Non-doc Order dated Aug. 16, 2023).

### B.    Plea Agreement

On July 15, 2024, Leonard plead guilty to all six counts in the Indictment pursuant to a written Plea Agreement.  (Doc. No. 22.)  Relevant here, in the Plea Agreement, Leonard agreed "that the following calculation, using the current advisory Sentencing Guidelines Manual, represents the correct computation of the applicable offense level":

**GROUP 1:**
**Count 1: Conspiracy to PWID Cocaine, 21 U.S.C. § 846**
**Count 2: PWID Cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(B)**
**Count 3: PWID Fentanyl, 21 U.S.C. § 841(a)(1), (b)(1)(B)**
**Count 4: PWID Methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(C)**
**Count 5: Felon in Possession of Firearms and Ammunition, 18 U.S.C. § 922(g)(1)**

| | | |
|---|---|---|
| Base offense level | 30 | § 2D1.1(c)(5) |
| Maintaining a drug premises | +2 | § 2D1.1(b)(12) |
| **Subtotal Offense Level Before Acceptance** | **32** | |

**Count 6: Possession of a Firearm in Furtherance of a Drug Trafficking Offense, 18 U.S.C. § 924(c)(1)(A)(i)**

| | | |
|---|---|---|
| Base offense level | 60 months, consecutive to any other sentence imposed | § 2K2.4(b) |

(*Id*. at PageID# 79.)  The Plea Agreement further provides that the Government "agrees to recommend a three (3) level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b)," which would reduce the Total Offense Level for "Group 1" (i.e.,. Counts 1 through 5) to 29. (*Id*.)  Notably, however, the parties represented that they "have no agreement about the Criminal History Category applicable in this case."  (*Id*.)  Rather, the Plea Agreement provides that "Defendant

understands that the Criminal History Category will be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office."[1]  (*Id.* at PageID#s 79-80.)

While the parties jointly agreed to "recommend that the Court impose a sentence within the range and of the kind specified pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations" set forth above, the Plea Agreement provides that "Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the advisory guideline range under the Sentencing Guidelines, whether there is any basis to depart from that range or impose a sentence outside the advisory guideline range, and what sentence to impose." (*Id*. at PageID# 78.)  Likewise, the Plea Agreement further provides that "Defendant understands that sentencing rests within the discretion of the Court; that federal sentencing law requires the Court to impose a sentence which is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a), and that the Court must consider among other factors the advisory United States Sentencing Guidelines in effect at the time of sentencing and that in determining the sentence, the Court may depart or vary from the advisory guideline range."  (*Id*. at PageID# 77.)

**C.      Sentencing**

      **1.      The PSR**

---

[1] Of particular relevance to the instant Motion to Vacate, in the section of the Plea Agreement entitled "Factual Basis and Relevant Conduct," Leonard stipulated to one (1) previous controlled substance felony offense.  (Doc. No. 22 at PageID# 83.)  Specifically, the Plea Agreement provides that: "Prior to May 18, 2023, Defendant knew that he had previously been convicted of crimes punishable by imprisonment for a term exceeding one year, those being Trafficking Cocaine and Possession of Cocaine, on or about December 23, 2008, in case number 2007CR1350, in the Court of Common Pleas of Stark County, Ohio." (*Id*.)

The Probation Office submitted its First Disclosure of Presentence Report on September 26, 2024.  (Doc. No. 25.)  Objections were due within fourteen (14) days but not filed by either Leonard or the Government.  The Final Presentence Report ("PSR") was filed on October 28, 2024.  (Doc. No. 26.)

Relevant here, the PSR writer found that, at the time of the instant offense in May 2023, Leonard had at least two (2) prior felony convictions for a controlled substance offense for purposes of U.S.S.G. § 4B1.1(b)(2).  (*Id*. at PageID# 131.)  Specifically, the PSR writer counted the following two (2) convictions as separate predicate convictions for guideline purposes:

| Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition |
|---|---|---|
| 07/11/2007 (age 26) | Trafficking in Cocaine (Ohio Rev. Code 2925.03(A)(2) (F1))<br><br>Summit County Court of Common Pleas, Case No. CR-2007-07-2265-A | 2/13/2008:  8 years imprisonment<br><br>8/21/2015:  Released on Post-Release Control ("PRC")<br><br>8/18/2020:  PRC completed |
| 8/15/2007 (age 26) | Possession of Cocaine (F2) and Trafficking in Cocaine (Ohio Rev. Code 2825.03(A)(2)(C)(4)(e) (F2))<br><br>Stark County Court of Common Pleas, Case No. 2007CR1350 | 9/26/2008:  3 years imprisonment<br><br>8/21/2015:  Released on PRC<br><br>8/18/2020:  PRC completed. |

(*Id*.)  Because Leonard had two (2) prior felony convictions for controlled substance offenses, the PSR writer concluded that Leonard qualified as a career offender for guidelines calculation purposes. (*Id*. at PageID# 128.)  The PSR writer therefore applied a Chapter Four Enhancement to Count Group

5

1 (i.e., Counts 1 through 5 of the Indictment), which resulted in a Total Offense Level of 31.[2] (*Id*. at

PageID#s 127-129.)  The PSR further concluded that, because Leonard qualified as a career offender,

his criminal history category was VI.  (*Id*. at PageID#s 132.)

As such, the PSR writer found that the guideline range was 262 months to 327 months."[3]  (*Id*.

at PageID# 138.)  The PSR writer noted that the computations in the PSR conflicted with those in the

Plea Agreement, explaining as follows:

> The offense level computations in the report do not coincide with those stipulated in the plea agreement.  In this report, the defendant was found to be a Career Offender.  The Plea Agreement did not contemplate the defendant being classified as a Career Offender.  According to the computations in the Plea Agreement, with a Total Offense Level of 29 and a Criminal History Category of IV, the guideline range of imprisonment would be 121 months to 151 months ***.  If the Court adopts the probation officer's guideline calculation and determines that there are no valid grounds for a departure or a sentence outside of the guidelines, the Court may wish to consider giving the defendant an opportunity to withdraw the guilty plea.

(*Id*.)   As noted above, the docket reflects that Leonard did not file an Objection to the PSR.

### 2.     Leonard's Sentencing Memorandum

On November 4, 2024, however, Leonard filed a Sentencing Memorandum.  (Doc. No. 28.)

Among other things, Leonard argued that the Court should not apply a career offender enhancement

under the particular circumstances presented, as follows:

> Both of the predicate offenses share the exact date of occurrence/incident.  (R. 26, PSR, pp. 10, ¶33, 34).  It appears that Mr. Leonard was arrested in person in the Summit County matter, where a search  warrant was executed on a property associated with him on the same day in Stark County. Those two separate actions by law

---

[2] According to the PSR, the adjusted offense level was 34 and not 32 as stipulated in the Plea Agreement, and the total offense level was 31 after applying a three-level reduction for acceptance of responsibility.

[3] Specifically, the PSR writer explained as follows:  "Based upon a total offense level of 31 and a criminal history category of VI, the guideline imprisonment range is 188 months to 235 months.  However, the defendant is a career offender who is also convicted of 18 U.S.C. §§ 924(c); therefore, the applicable guideline range is 262 months to 327 months."  (*Id*. at PageID# 138 (citing USSG §§4B1.1(c)(3) and 5G1.2(e)).

6

enforcement in two separate state jurisdictions created two separate offenses and, subsequently, convictions with sentences that, on their faces, technically satisfy the requirements for predicate offenses.  However, Mr. Leonard argues that applying for career offender enhancement is fundamentally unfair in his case.  Had the geographical jurisdictions consolidated the charges, or had he been charged federally on all that criminal activity, he likely would not have qualified as a career offender.  Mr. Leonard respectfully requests that this honorable Court consider a downward deviation from the recommended offense level in the P.S.R. to a sentencing range with the negotiated plea agreement at a Criminal History Level IV.

(*Id*. at PageID#s 156-157.)  Later in his Sentencing Memorandum, Leonard again noted the disparity between the PSR and the Plea Agreement, explaining that the total range under the Plea Agreement was 121 to 151 months whereas the total range applying a Career Offender enhancement results in a range of 248- 285 months.[4]  (*Id*. at PageID# 160.)

### 3.	The Sentencing Hearing

The Court conducted a sentencing hearing on November 12, 2024.  (Doc. No. 35.)  At the outset, Leonard's counsel confirmed that he had fully discussed the PSR with Leonard, including the disparity between the PSR and the Plea Agreement.  (*Id*. at PageID# 186.)  Leonard's counsel also confirmed that he did not file any Objections to the PSR.  (*Id*.)

The Court then discussed the calculations in the PSR and adopted it, as follows:

THE COURT:  ... [T]he PSR writer concluded that the offense level for Count Group 1 is 34 before acceptance of responsibility and, after reducing that level for acceptance of responsibility, concluded that the Total Offense Level for Count Group 1 is 31.

The PSR writer's conclusion that the offense level is 34 before acceptance of responsibility differs from the parties' stipulation in the plea agreement that the Total Offense Level before acceptance of responsibility for Count Group 1 is 32.  Of course, the Court has already confirmed with counsel for the parties that neither party objected

---

[4] Specifically, Leonard asserts as follows:  "The plea agreement calculation would result in 121-151 months for Counts 1-5.  Count 6 adds 60 consecutive months to that 121-151 months.  That total range [under the Plea Agreement] would then be 181–211 months.  However, the P.S.R.'s determination that Mr. Leonard is a career offender if applied to Counts 1-5, results in a potential range of 188-235 months.  After adding 60 consecutive months to that career offender range, that total would be 248-285 months."  (*Id*. at PageID# 160.)

to the PSR in any way, and the Court also notes that in the written plea agreement, the parties agreed to recommend that the Court impose a sentence within the range and the kind specified pursuant to the advisory sentencing guidelines in accordance with the computation and stipulations set forth in the plea agreement, and that neither party would recommend or suggest in any way that a departure or variance is appropriate, either regarding the sentencing range or regarding the kind of sentence. The Court therefore does conclude that the offense level for Count Group 1 is 34 before acceptance of responsibility.

(*Id*. at PageID#s 190-191.)  Taking into account Leonard's acceptance of responsibility, the Court then reduced the offense level for Count Group 1 by three levels (to 31) pursuant to U.S.S.G. § 3E1.1(a) and (b). (*Id*. at PageID# 192.)  As to Count 6 (or "Count Group 2"), the Court noted that pursuant to U.S.S.G. § 2K2.4(b), 60 months must run consecutively to any other sentence. (*Id*.) Thus, the Court concluded that "the guideline sentence is 262 months to 327 months of imprisonment on Count 1 through 5 to be served concurrently;" and the guideline sentence is 60 months for Count 6 to be served consecutively. (*Id*.)  Neither the Government nor Leonard objected to this calculation and the Court adopted the PSR without change.  (*Id*. at PageID#s 192-193.)

The Court proceeded to inquire of AUSA Daly whether the Government was aware (prior to the PSR) that Leonard would qualify as a Career Offender. (*Id*. at PageID# 194.)  AUSA Daley stated that the Government was not aware of Leonard's prior Summit County conviction and, therefore, the Government had not believed that Leonard would be a Career Offender during plea negotiations. (*Id*.)  The Court responded as follows:

THE COURT: Even though you stipulated in the plea agreement to a Total Offense Level of 29, not knowing about the Summit County conviction as outlined in paragraph 33 of the [PSR] that therefore makes Mr. Leonard a Career Offender, the plea agreement certainly indicates that as to the Criminal History Category, that will be determined by the Court after the completion of the PSR.  And so even though you didn't know about the Summit County conviction, one of the two predicate offenses, and that's why you stipulated to the Total Offense Level of 29, nonetheless, the Court determines the Criminal History Category and this Court would be well within its

8

rights and correct in finding that he's a Criminal History Category VI, because he is a Career Offender, and still follow the plea agreement.

MR. DALY: Yes, because -- right.  If the Court found that he was a Criminal History Category VI but followed the plea agreement as to the –

THE COURT: Total Offense Level.

MR. DALY: -- guideline calculation, the offense level, I think the Court is well within its rights to do that.

(*Id*. at PageID#s 195.)  Counsel for Leonard then argued as follows:

MR. SMOTZER:  .... May it please the Court, so we -- we did negotiate the plea agreement as it stands before the Court with the agreement that, of course, we agreed to the Total Offense Level there, understanding, and my client understands, that the discretion of determining that criminal history level lies with the Court.

You know, at the appropriate time, you know, I'll take the opportunity, if the Court's willing to hear me out, on where we think we should end up with that criminal history level, Your Honor.  I noted in my Sentencing Memorandum, you know, technically he meets the requirements for the Career Offender predicate offenses. You know, he and I talked about that.  There was some nuance to it where it may not qualify. . . technically, but in the spirit of the law, both those offense dates originated on the same day.  It was kind of a -- a geographical quandary I'll call it.  He was taken into custody, charged with trafficking in Summit County.  On that same day, his house in Stark County was raided and just by the fact that it happened in two separate counties on the same day and there was two separate sentencing days down the way from it he qualified as the Career Offender.

You know, had just, I guess, by chance or had he been perhaps prosecuted, arrested, and investigated by the federal government, it would have been one total offense but, unfortunately, we know what the criminal history shows, and we understand that's within the Court's discretion.

THE COURT: Were you aware of the two separate convictions in Summit and Stark County at the time you entered into the plea agreement? AUSA Daly has indicated that he was not aware of the Summit County conviction.

MR. SMOTZER: So I -- I learned more about -- when [the PSR] came back is when I learned the details of the Summit and Stark County -- \*\*\*  There was two separate convictions. When we had discussed his criminal history, he had always said it's all the same, it's all the same, and then clearly it wasn't when the PSR came back, Your Honor.

THE COURT: All right. Certainly I did advise Mr. Leonard, consistent with paragraph 16 of the written plea agreement, that the sentencing recommendations were not binding on the Court and that even if there was a disagreement, he was not -- that would not permit him to withdraw his plea; correct?

MR. SMOTZER: That is correct, Your Honor.

THE COURT: And, of course, then the Criminal History Category was discussed in paragraph 20, indicating that the parties had no agreement about it and advising Mr. Leonard that -- and having him assure me that he understood that the Criminal History Category would be determined by the Court after the completion of the PSR.

MR. SMOTZER: That is accurate, Your Honor.  It was discussed with him as we went through the plea agreement and I believe preserved on the record in open court.

(*Id*. at PageID#s 196-198.)

The Government then asked the Court to find that the appropriate offense level for Counts 1 through 5 is 29 after acceptance of responsibility, with a consecutive sentence of 60 months for Count 6.  (*Id*. at PageID# 198.)  With a total offense level of 29 and a criminal history category of VI, the Government argued that the sentencing range would be a total of 211 to 248 months (i.e., 151 to 188 months for Counts 1 through 5 plus 60 months for Count 6.)  (*Id*. at PageID#s 198-199.)  The Government recommended a sentence in the "mid to upper range of that 211 to 248 months."  (*Id*. at PageID#s 199-202.)  Counsel for Leonard argued that the Court to sentence Leonard on the lower end of that range.  (*Id*. at PageID#s 202-204.)

The Court then discussed the sentencing factors at some length, including Leonard's prior convictions.  (*Id*. at PageID#s 204-208.)  Although the Court found that Leonard is a Career Offender based upon the 2008 Summit County and Stark County convictions, the Court varied downward with respect to the Total Offense Level, as follows:

THE COURT:  I do plan to vary downward in terms of the Total Offense Level.  Even though I've adopted the PSR, it's correct in assigning you a Total Offense Level of 31.

The parties agreed that the Total Offense Level would be 29, so I'm going to vary downward to comply with that stipulation in the written plea agreement.

But the fact remains that with that Career Offender status, the Criminal History Category is VI, and there was no agreement in the written plea agreement or stipulation of what that Criminal History Category would be. And both sides have, in effect, agreed that the Criminal History Category is VI based upon that Career Offender status.

I know Mr. Smotzer made an argument on your behalf that, well, yes, technically, you're a Career Offender, but because those convictions in 2007 and 2008 really, the raids, or the warrants that were issued, or the search of your residences or places occurred about the same time but they happened in different counties, different convictions, et cetera, but technically you are a Career Offender and therefore, I do -- I've already found that the Career Offender -- that that makes you a Criminal History Category VI. So I do plan to sentence you consistent with the Total Offense Level of 29 -- I'm varying downward in that regard -- with a Criminal History Category of VI.

(*Id*. at PageID#s 208-209.) The Court then sentenced Leonard to a term of 163 months on each of

Counts 1 through 5, to be served concurrently, and 60 months on Count 6 to be served consecutively,

for a total of 223 months. (*Id.* at PageID# 210.) *See also* Doc. No. 29. The docket reflects that

Leonard did not appeal to the Sixth Circuit.

### D. Motion to Vacate

On November 19, 2025, Leonard filed a *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct his Sentence. (Doc. No. 36.) Therein, Leonard raises the following three Grounds

for Relief:

I. Ineffective Assistance of Counsel for Failure to Challenge the "Separate Occasions" or "Intervening Arrest" Clause.

Supporting Facts: Counsel's performance was deficient. Counsel failed to challenge the "separate occasions" or "intervening arrest" clause and also failed to investigate the sequence of Petitioner's prior offenses.

II. Ineffective Assistance of Counsel for Failure to Object to the Sentence Enhancement.

11

> Supporting Facts:  Counsel ineffectively failed to object to the Career Offender Enhancement.

III.  The Sentence imposed Violated Petitioner's Fifth Amendment Right to Due Process.

> Supporting Facts:  The reliance on erroneous information regarding the nature of prior convictions constitutes a violation of due process.

(Doc. No. 36 at PageID#s 229-231.)[5]  The Government filed its Response to Leonard's Motion to Vacate on January 2, 2026.  (Doc. No. 39.)  Leonard filed a Traverse on January 26, 2026.  (Doc. No. 40.)

## II.  Standard of Review

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  "Relief is warranted only where a petitioner has shown 'a

---

[5] In addition, and on that same date, Leonard filed a Motion for Appointment of Counsel.  (Doc. No. 37.)  On November 21, 2025, the Court denied Leonard's request for appointment of counsel.

fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *See McQueen v. United States*, 58 Fed. Appx 73, 76 (6th Cir. 2003); *Whittingham v. United States*, 2025 WL 243963 at * 2 (6th Cir. Jan 2. 2025). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *See, e.g.*, *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961); *United States v. Alqsous*, 2025 WL 896095 at * 4 (N.D. Ohio March 24, 2025).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner*, 183 F.3d at 477). But a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 Fed. Appx 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 Fed. Appx 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing). *See also Napier v. United States*, 1993 WL 406795 at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing *Machibroda v. United States*, 368 U.S. 487, 496 (1962)).

*See also Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible.'")

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'"  *Valentine,* 488 F.3d at 334 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).  Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial.  *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977)).

Here, the Court finds that an evidentiary hearing is not warranted.  As set forth in detail below, Leonard has failed to identify specific facts that, if true, would entitle him to relief under § 2255.

## III.    Analysis

### A.      Ineffective Assistance of Counsel (Grounds I and II)

In his *pro se* Motion to Vacate, Leonard first argues that his trial counsel was ineffective because he failed to investigate and object to the use of Leonard's 2008 Summit County and Stark County convictions as separate predicate convictions.  (Doc. No. 36 at PageID# 238.)  Leonard maintains that "had counsel properly raised this issue, Petitioner would not have been classified as a career offender, and his guideline range would have been substantially lower." (*Id*.)  The Government argues that Leonard has failed to show that his counsel's performance was constitutionally deficient. (Doc. No. 39.)

Claims of ineffective assistance of counsel are appropriately raised in a Section 2255 motion, and a petitioner "must prove his allegation that his lawyers were constitutionally ineffective by a

14

preponderance of the evidence."  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  The well-established federal law used for assessing ineffective assistance of counsel claims is the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* imposes a two-prong test for determining whether counsel was constitutionally ineffective.  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

Under the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  In other words, a court assessing an ineffective assistance claim must "determine whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance."  *Id*. at 690.  When making this assessment, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.*  Under the second prong, the defendant must show that her counsel's error prejudiced him.  *Id*. at 691-92.  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### 1. Failure to Argue that Leonard should not be Considered a Career Offender

Leonard first argues that his counsel was ineffective for failing to raise the argument that Leonard should not be treated as a career offender because his 2008 Summit County and Stark County convictions constitute only one predicate offense for sentencing purposes.  (Doc. No. 36.)  Leonard begins by describing the events underlying these convictions as follows:

On July 9, 2007, the petitioner was arrested in Summit County, Ohio, after a traffic stop revealed narcotics in Petitioner's vehicle. As a result of that arrest, a search warrant was issued the same day for Petitioner's residence in Stark County, Ohio. Narcotics were also found during that search and an arrest warrant was issued for Petitioner on July 11, 2007.  Petitioner remained in Summit County Jail awaiting trial for the traffic stop arrest.  In July 2007, Petitioner posted bond in Summit County and was released from custody. Petitioner was unaware that a warrant had been issued for his arrest based on the findings inside his residence on July 9, 2007.  On August 7, 2007, Petitioner was arrested in Stark County.  Petitioner was ultimately convicted in both counties.  The[] [sentences in the Summit County and Stark County cases] were ordered to be served concurrently to each other.

(*Id.* at PageID#s 241-242.)   Based on the above, Leonard argues that his counsel "should have recognized that the government's reliance on the Summit and Stark County convictions as separate predicates violated *Wooden v. United States*, 595 U.S. 360 (2022) and its progeny."  (*Id*. at PageID# 242.)  He maintains that, under *Wooden*, multiple offenses committed as part of a "single criminal episode" do not occur on "different occasions" for purposes of sentence enhancement.  (*Id*.)  Leonard asserts that the Government's reliance on his 2008 Summit and Stark County convictions as "distinct 'occasions' violated *Wooden*" because those convictions "arose from the same arrest and continuous investigative sequence on July 9, 2007."  (*Id*.)

Leonard further argues that his counsel was ineffective for failing to argue that his 2008 Summit and Stark County convictions do not qualify as separate predicate offenses because there was no "intervening arrest" between them for purposes of U.S.S.G. § 4A1.2(a)(2).  (*Id*. at PageID#s 243-244.)  He argues that "[t]he conduct underlying both convictions occurred during a continuous course of conduct, motivated by a single criminal episode, and [was] prosecuted separately only because of geographical happenstance."  (*Id*.)  Leonard maintains that "[t]his factual and geographic reality places this case squarely within the intended protection of U.S.S.G. § 4A1.2(a)(2), which was designed to prevent overrepresentation of a defendant's criminal history when multiple charges stem

16

from closely related events that do not evidence a meaningful break in criminal intent or conduct." (*Id*. at PageID# 244.) Relatedly, Leonard argues that counsel was ineffective for failing to argue that the career offender enhancement under U.S.S.G. § 4B1.1 was not warranted because his 2008 Summit and Stark County convictions "represent only one 'prior felony conviction' within the meaning of § 4B1.2(c)." (*Id.* at PageID# 246.) Leonard asserts that "[t]o treat [his 2008 Summit County and Stark County convictions] as separate predicates would contravene the spirit of both *Wooden* and the Guidelines transforming a mere jurisdictional happenstance into a decades-long sentence enhancement intended only for true recidivists." (*Id*.)

In response, the Government argues that Leonard has failed to show that his counsel's performance was constitutionally deficient because the 2008 Summit County and Stark County convictions were correctly counted as Career Offender predicate offenses. (Doc. No. 39 at PageID#s 268-270.) The Government first asserts that *Wooden* is inapplicable to Leonard's Career Offender designation because *Wooden* "addressed the different question of whether a particular conviction qualifies as a predicate for a finding that a defendant is an Armed Career Criminal under the Armed Career Criminal Act, and did not address Career Offender predicates." (*Id*.) (citing *United States v. Cochran*, 2023 WL 8320316 (6th Cir. 2023)).

The Government next argues that Leonard's 2008 Summit County and Stark County convictions were properly counted as separate offenses under U.S.S.G. § 4A1.2(a)(2). (*Id*.) While the Government acknowledges that there was no intervening arrest between Leonard's two predicate offenses because both offenses occurred on July 9, 2007, the Government asserts that Leonard's 2008 Summit County and Stark County convictions nonetheless should be counted separately because the sentences in those cases (1) did not result from offenses charged in the same instrument; and (2) were

not imposed on the same day.  (*Id*.)  (citing U.S.S.G. § 4A1.2(a)(2)).  Thus, the Government maintains that "the Court correctly determined that Leonard's two prior drug trafficking convictions were predicate offenses which made him a Career Offender" and, therefore, "Leonard can show neither deficient performance nor prejudice in his counsel's failure to challenge the Court's finding on the issue."  (*Id*.)

In his Traverse, Leonard responds that the Government has misapplied U.S.S.G. § 4A1.2. (Doc. No. 40.)  He maintains that the "same charging instrument" and "same day clauses" of § 4A1.2(a)(2) "apply only after the threshold intervening-arrest inquiry."  (*Id*. at PageID# 276) (citing *United States v. Rogers*, 86 F.4th 259 (6th Cir. 2023)).  Leonard asserts that, because there was no "intervening arrest" between his 2008 Summit County and Stark County convictions, that ends the matter and he cannot be considered a career offender as a matter of law.  (*Id*.)  Leonard argues that "trial counsel failed to investigate, recognize, or raise this dispositive issue, resulting in an erroneous career-offender designation that dramatically increased [his] guideline range."  (*Id*. at PageID# 274.)

The Court begins with "some fundamentals of the Guidelines."  *United States v. Rogers,* 86 F.4th 259, 262 (6th Cir. 2023).  As the Sixth Circuit has explained, "[a] defendant's criminal history category (which, together with the defendant's underlying offense level, defines the applicable Guidelines range) turns in part on whether the defendant has had a 'prior sentence of imprisonment.'" *Id*. (quoting U.S.S.G. § 4A1.1.)  "More prior sentences mean a higher criminal history category and, with it, a higher Guidelines range."  *Id*.  "And if at least two of those prior sentences are tied to certain

'prior felony convictions'—either 'a crime of violence' or 'a controlled substance offense'—they raise the specter of a career offender enhancement."[6] *Id.* (quoting §§ 4B1.1(a), 4B1.2(c)).

For a "prior sentence of imprisonment" to count for purposes of the career offender enhancement, the sentence must be tied to a "prior felony conviction[]." *Id.* (quoting § 4B1.2(c) (citing § 4A1.1(a), (b), or (c)). To assist district courts in determining whether and how to "count" a prior sentence for purposes of the career offender enhancement, Section 4A1.2(a)(2) of the Guidelines provides the following explanation:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. **Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).** For purposes of this provision, a traffic stop is not an intervening arrest**. If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day**. Treat any prior sentence covered by subparagraph (A) or (B) as a single sentence. See also § 4A1.1(d).

U.S.S.G. § 4A1.2(a)(2). *See also United States v. Woods*, 61 F.4th 471, fn 5 (6th Cir. 2023); *United States v. Sturgill*, 761 Fed. Appx. 578, 583 (6th Cir. 2019).

For the following reasons, the Court rejects Leonard's argument that his counsel was ineffective for failing to "recognize and argue" that his 2008 Summit County and Stark County convictions should not be counted separately under U.S.S.G. § 4A1.2(a)(2). While Leonard devotes much of his briefing to the argument that there was no "intervening arrest" between the offenses

---

[6] Specifically, U.S.S.G. § 4B1.1(a) ("Career Offender") provides as follows: "(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

underlying his 2008 Summit County and Stark County convictions, the Court need not reach this argument.  Even assuming there was no "intervening arrest" between these convictions, [7] the Court finds that Leonard's 2008 Summit County and Stark County convictions nonetheless count as separate predicate offenses because the sentences from these convictions did not result from "offenses contained in the same charging instrument" and were not "imposed on the same day."  *See* U.S.S.G § 4A1.2(a)(2).

The docket sheet from Leonard's Summit County case reflects that an indictment was filed on July 19, 2007 charging Leonard with (1) Trafficking in Cocaine; (2) Possession of Cocaine, and (3) Possession of Marijuana. [8]  *See State v. Leonard*, Summit County Court of Common Pleas Case No. CR-2007-07-2265-A (docket).  According to Leonard, these charges stemmed from a traffic stop of his vehicle that occurred in Summit County on July 9, 2007.  (Doc. No. 36 at PageID# 241.)  On February 13, 2008, Leonard pled guilty to Trafficking in Cocaine, in violation of Ohio Rev. Code § 2925.03(A)(2), a felony of the first degree.  *See State v. Leonard*, Summit County Court of Common Pleas Case No. CR-2007-07-2265-A (docket).  On that same date, Summit County Court of Common Pleas Judge Elinore Marsh Stormer sentenced Leonard to a term of eight (8) years imprisonment, "to be served concurrently with the Defendant's case from Judge Haas'[s] court" in the Stark County Court of Common Pleas.  *Id*.

Meanwhile, the docket sheet from Leonard's Stark County case reflects that Leonard was indicted on August 15, 2007 on charges of (1) Trafficking in Cocaine, in violation of Ohio Rev. Code

---

[7] As noted *supra,* the Government concedes that "there was no intervening arrest between Leonard's two predicate offenses because, according to the PSR, both offenses occurred on July 9, 2007."  (Doc. No. 39 at PageID# 269.)

[8] The Trafficking of Cocaine and Possession of Cocaine charges included Major Drug Offender Specifications pursuant to Ohio Rev. Code § 2941.1410.

20

§ 2925.03(A)(2)(C)(4)(e); and (2) Possession of Cocaine, in violation of Ohio Rev. Code § 2925.11(A)(C)(4)(D). *See State v. Leonard*, Stark County Court of Common Pleas Case No. 2007CR1350 (docket). According to Leonard, these charges stemmed from the execution of a search warrant at his Stark County residence on July 9, 2007, during which narcotics were found. (Doc. No. 36 at PageID# 241.) On December 23, 2008, Leonard pled guilty to both counts and was sentenced by Stark County Court of Common Pleas Judge John Haas to a term of three (3) years imprisonment on each count, to be served concurrently. *See State v. Leonard*, Stark County Court of Common Pleas Case No. 2007CR1350 (docket).

As set forth *supra*, U.S.S.G. § 4A1.2(a)(2) expressly provides that "[i]f there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." U.S.S.G. § 4A1.2(a)(2). Here, the state court docket sheets reflect that Leonard's 2008 Summit County and Stark County sentences did not result from offenses that were contained in the same charging instrument. To the contrary, Leonard was indicted in Summit County in July 2007 based on drug charges stemming from a traffic stop of his vehicle and subsequently indicted in Stark County in August 2007 based on separate charges stemming from the execution of a search warrant at his Stark County residence. Moreover, the state court docket sheets show that Leonard's sentences were not imposed on the same day. Rather, Leonard was sentenced by Summit County Court of Common Pleas Judge Stormer on February 13, 2008 and by Stark County Court of Common Pleas Judge Haas on December 23, 2008.

Leonard argues that the "same charging instrument" and "same day clauses" of § 4A1.2(a)(2) "apply only after the threshold intervening-arrest inquiry." (Doc. No. 40 at PageID# 276.) This

21

argument is without merit.  As noted above, § 4A1.2(a)(2) expressly provides that "*if there is no intervening arrest,*" prior sentences should be counted separately so long as they do not result from offenses contained in the same charging instrument and the sentences were not imposed on the same day.  U.S.S.G. § 4A1.2(a)(2).  Thus, pursuant to the express terms of § 4A1.2(a)(2), the "same charging instrument" and "same day" clauses of this section apply where (as here) there is no intervening arrest.[9]  *See, e.g., Sturgill*, 761 Fed. Appx. at 583 ("But even if offenses were not separated by an intervening arrest, the Guidelines require that prior sentences be 'counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.' [U.S.S.G. § 4A1.2(a)(2)].  The district court concluded that Owens's sentences should be treated separately because, even though they were not separated by

---

[9] Leonard also argues that his 2008 Summit County and Stark County convictions should not be counted separately because they are "related offenses"; i.e., "part of a single common scheme or plan." (Doc. No. 36 at PageID#s 244-245.) He further maintains that "where there is no intervening arrest, courts must assess whether the convictions reflect distinct criminal episodes or a single course of conduct." (Doc. No. 40 at PageID# 276) (citing *United States v. Hazelwood*, 398 F.3d 792 (6th Cir. 2005)).  Leonard's arguments are without merit.  As Leonard himself acknowledges, these arguments are based on a prior version of U.S.S.G. § 4A1.2 that is no longer in effect.  As the Sixth Circuit has explained, "[e]ffective November 1, 2007, the United States Sentencing Commission promulgated Amendment 709, which altered the way in which the Guidelines determined whether prior crimes would be treated as single or separate offenses." *United States v. Horn*, 612 F.3d 524, 526 (6th Cir. 2010) (citing U.S.S.G. app. C, amend. 709.)  Prior to Amendment 709, § 4A1.2(a)(2) provided that "[p]rior sentences imposed in unrelated cases are to be counted separately." U.S.S.G. § 4A1.2(a)(2) (2006). *See Cantu v. United States*, 2008 WL 2397629 at * 1 (W.D. Mich. June 11, 2008).  Application Note 3 to that Section explained: "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest.... Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." (*Id.*) *See Cantu*, 2008 WL 2397629 at * 1.  Amendment 709, however, changed the relevant analysis. *Id*.  As discussed above, § 4A1.2(a)(2) now reads: "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest....  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." U.S.S.G. § 4A1.2(a)(2).  Thus, Leonard's argument that his 2008 convictions should not be counted separately because they are "related offenses" that were part of a "single common scheme or plan" is premised on the pre-2007 version of § 4A1.2(a)(2) that existed prior to Amendment 709, which was no longer in effect at the time of Leonard's sentencing in the instant action.  The Court finds that it was not ineffective for Leonard's counsel to fail to raise an argument based on this outdated version of § 4A1.2(a)(2).

22

an intervening arrest, 'they have different charging instruments ... and they were not imposed on the same day.' [Defendant] has offered no evidence to refute the district court's conclusion.")

Leonard's reliance on the Supreme Court's decision in *Wooden, supra* is also misplaced.  As noted above, Leonard argues that, under *Wooden*, multiple offenses committed as part of a "single criminal episode" do not occur on "different occasions" for purposes of sentence enhancement. (Doc. No. 36.)  He asserts that his counsel was ineffective for failing to argue that his 2008 Summit County and Stark County convictions should not be counted separately under *Wooden* because those convictions "arose from the same arrest and continuous investigative sequence on July 9, 2007." (*Id*.)

Leonard's argument is without merit.  The Sixth Circuit has expressly found that *Wooden* is not applicable to the issue of whether predicate offenses count separately for purposes of the career offender enhancement.  *See United States v. Cochran*, 2023 WL 8320316 at * 2 (6th Cir. Dec. 1, 2023).  As the Sixth Circuit explained in *Cochran, supra*, "[t]he issue in *Wooden* was whether ten separate convictions arising from a single criminal episode may count ten times under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1)." *Id*. "*Wooden* did not involve the career-offender enhancement in U.S.S.G. § 4B1.1." *Id.*  The Sixth Circuit noted that, while both designations require courts to find qualifying predicate offenses before applying the enhancements, "the tests for determining when those predicate offenses count are entirely different," as follows:

> Under the ACCA, convictions count separately when they are "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Using the ordinary meaning of the word "occasion," the Supreme Court held that "multiple crimes may occur on one occasion even if not at the same moment." *Wooden*, 595 U.S. at 366. By contrast, the "counted separately" test under U.S.S.G. § 4A1.2(a)(2) asks whether there has been an intervening arrest, or whether the convictions resulted from offenses charged "in the same charging instrument" or whose "sentences were imposed on the same day."

*Id.* In light of these differences, the Sixth Circuit found that *Wooden* was "inapt" to the issue of whether predicate offenses are counted separately for purposes of § 4A1.2(a)(2). *Id.*

Accordingly, and for all the reasons set forth above, the Court finds that Leonard's trial counsel was not ineffective for failing to argue that that the 2008 Summit County and Stark County convictions should not be counted separately for purposes of U.S.S.G. § 4A1.2(a)(2).

### 2. Failure to Investigate and Object

Leonard nonetheless argues that counsel was ineffective for failing to investigate and object to the use of his 2008 Summit County and Stark County convictions as separate predicate offenses. (Doc. No. 36 at PageID#s 238, 242-243.) He maintains that "assuming *arguendo* that applying the career offender guideline was appropriate, Petitioner was still prejudiced by counsel's failure to investigate and discover that Petitioner qualified as a career offender." (Doc. No. 40 at PageID# 277.) Specifically, Leonard asserts that "a competent attorney would have conducted a thorough investigation and uncovered both alleged predicate offenses" and "would then be able to negotiate a better plea deal in order to limit his client's sentencing exposure." (*Id.*) The Government fails to address this issue in their Brief in Opposition.

As discussed above, prior to the PSR, neither AUSA Daly nor Leonard's counsel (Attorney Smotzer) were aware of Leonard's 2008 Summit County conviction. (Doc. No. 35 at PageID#s 194, 197.) During the Sentencing Hearing, Attorney Smotzer, explained that (prior to the PSR), he had discussed Leonard's criminal history with him but that Leonard "always said it's all the same, it's all the same;" i.e., Leonard had failed to explain that he was indicted and sentenced separately in Stark and Summit counties. (*Id.* at PageID# 197.) As neither Attorney Smotzer nor AUSA Daly were aware of the Summit County conviction until the PSR was issued, neither of them believed that

Leonard would be a Career Offender and they did not account for this during plea negotiations.  (*Id*. at PageID# 194-197.)

Even assuming that Attorney Smotzer was deficient for failing to more thoroughly investigate Leonard's prior criminal history,[10] the Court finds that Leonard is not able to demonstrate prejudice under *Strickland*.  As noted above, to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112.  Here, Leonard argues that he was prejudiced because Attorney Smotzer "would have been able to negotiate a better plea deal" if he had "uncovered both alleged predicate offenses" prior to the PSR.  (Doc. No. 40 at PageID# 277.)  This argument is entirely speculative.  Leonard offers no evidence that there was a reasonable probability that the Government would have agreed to a "better plea deal" if Attorney Smotzer had known that Leonard was a career offender.  Moreover, and notably, Leonard does not assert at any point in his briefing that, in the absence of "a better plea deal" that accounted for his career offender status, he would have rejected the Plea Agreement and gone to trial.

The Court further notes that, although Attorney Smotzer did not file an Objection to the PSR itself, he did argue in both his Sentencing Memorandum and during the Sentencing Hearing that it would be "fundamentally unfair" to treat Leonard as a career offender given the fact that the predicate offenses "shared the exact date of occurrence/incident" and were only prosecuted separately due to

---

[10] As discussed *supra*, Leonard was separately indicted in Summit and Stark counties and then sentenced in two different courts by two different judges.  It is uniquely within Leonard's own personal knowledge that he was sentenced by two different judges in proceedings that were months apart and in two different counties. Leonard offers no explanation why he failed to communicate this fact to Attorney Smotzer.

"jurisdictional happenstance." (Doc. No. 28 at PageID# 157; Doc. No. 35 at PageID#s 196-197.) The Court carefully considered this argument during the Sentencing Hearing. (Doc. No. 35 at PageID#s 194-198, 207-209.) The Court also expressly acknowledged the disparity between the Plea Agreement and the PSR and ultimately decided to vary downward in terms of the Total Offense Level from 31 (as reflected in the PSR) to 29 (as stipulated in the Plea Agreement). (*Id.* at PageID#s 207-209.) This resulted in a guidelines range of 211 to 248, which was lower than that recommended in the PSR. (*Id.* at PageID# 209.) And, after careful consideration, the Court sentenced Leonard in the lower end of that range, to a total term of 223 months. (*Id.* at PageID# 210.) Leonard offers no evidence, whatsoever, that (had Attorney Smotzer known that Leonard was a career offender) he would have been able to negotiate a plea deal that would have resulted in a lower sentence than what Leonard received.

For all the reasons set forth above, the Court therefore rejects Leonard's argument that his trial counsel was ineffective for failing to investigate and object to the use of his 2008 Summit County and Stark County convictions as separate predicate offenses. Accordingly, Grounds I and II of Leonard's Motion to Vacate are without merit and denied.

### B.  Due Process (Ground III)

Lastly, in his third Ground for Relief, Leonard argues that his sentence violates his due process rights under the Fifth Amendment. (Doc. No. 36 at PageID#s 247-248.) He asserts (summarily) that "the Court relied upon the government's incorrect assertion that" his 2008 Summit County and Stark County convictions were "separate criminal episodes" and that this error "produced an inflated sentence" that violated his due process rights. (*Id*.) Leonard further argues that "the combined effect

of ineffective assistance and sentencing based on false premises produced a fundamentally unjust result." (*Id.*)

In response, the Government argues that this Ground raises a claim of procedural unreasonableness that should have been raised on direct appeal. (Doc. No. 39 at PageID#s 271-272.) Because Leonard failed to do so (and the time for filing a direct appeal has long passed), the Government argues that Ground III is procedurally defaulted and deemed waived. (*Id.*) The Government further asserts that, even if this claim were not procedurally defaulted, it fails on the merits because the Court did not rely on inaccurate information and, instead, properly determined that Leonard was a career offender based upon his 2008 Summit County and Stark County convictions. (*Id.*)

In his Traverse, Leonard does not dispute that his due process is procedurally defaulted. (Doc. No. 40.) Rather, he asserts (summarily) that his sentencing constitutes a miscarriage of justice because "treating a single criminal episode as two separate career-offender predicates materially overstated [his] criminal history and produced a fundamentally unjust result." (*Id*. at PageID# 278.)

For the following reasons, the Court finds that Ground III is procedurally defaulted. It is well established that Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). As the Sixth Circuit has explained, "nonconstitutional errors ordinarily are not cognizable on collateral review," as defendants "must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Notably, errors in the application of the sentencing guidelines are also not cognizable under § 2255. *See Snider v.*

*United States*, 908 F.3d 183, 191 (6th Cir. 2018) ("[A] defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations"); *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) ("Relief is not available in a section 2255 proceeding for a claim of nonconstitutional, sentencing-guideline error when that error was procedurally defaulted through the failure to bring a direct appeal."). *See also Bates v. United States*, 2023 WL 6301099 at * 7 (W.D. Tenn. Sept. 27, 2003).

"In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "This hurdle is an intentionally high one for the petitioner to surmount, for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). "The [] cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding." *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir.1993). *See also Regalado*, 334 F.3d at 528.

Here, the Court finds that Leonard's argument that his sentence violates due process because it is premised on "materially inaccurate information" is procedurally defaulted. Leonard failed to appeal his conviction and sentence and, thus, failed to raise this claim on direct appeal. Moreover, Leonard has failed to demonstrate either cause or prejudice to excuse the default. Indeed, Leonard offers no reason why he failed to raise his due process argument on direct appeal. Moreover, the Court finds that Leonard has failed to demonstrate prejudice. As discussed at length above, the Court

properly counted his 2008 Summit County and Stark County convictions as two predicate offenses for purposes of U.S.S.G. § 4A1.2(a)(2).  Leonard has not introduced any evidence that the Court's decision in this regard was based on "materially inaccurate information."  Nor has Leonard demonstrated that his resulting sentence constitutes a "fundamental miscarriage of justice," particularly where the Court varied downward with respect to the Total Offense Level to comport with the parties' Plea Agreement and imposed a sentence that was within (and, indeed, on the lower end of) the applicable guidelines range.  Lastly, Leonard does not argue (or present any evidence) that he is "actually innocent."

Accordingly, and for all the reasons set forth above, the Court finds that Leonard's due process claim (Ground III) is procedurally defaulted and denied.

## IV.     Conclusion

Accordingly, Defendant-Petitioner John D. Leonard's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 36) is DENIED.  Further, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

_s/Pamela A. Barker_
PAMELA A. BARKER
Date:  June 15, 2026                                       U. S. DISTRICT JUDGE